UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE EUGENE
DOOLIN,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

Case No. 2:17-cv-12546

District Judge Paul D. Borman

Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 14), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 16) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Freddie Eugene Doolin, brings this action for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his

application for supplemental security income (SSI) benefits.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross-motion for summary judgment (DE 16), and the administrative record (DE 8).

### A. Plaintiff's Prior Applications

Plaintiff alleges his disability began on August 30, 2006, at the age of 44. (R. at 241.)  He lists several conditions (lower back nerve damage, degenerative disc disease (DDD), chronic obstructive pulmonary disease (COPD), and depression) that limit his ability to work.  (R. at 276.)  Plaintiff filed a claim for benefits on March 22, 2007, which was apparently denied on May 1, 2007 but not appealed.  (R. at 121, 46.)

### 1. Plaintiff's 1st protective application

On December 19, 2007, Plaintiff protectively filed an application for disability insurance (DI) benefits, which was initially denied on January 31, 2008. (R. at 121, 79.)  Plaintiff requested a hearing, which was held on October 27, 2009; however, on November 16, 2009, ALJ Paul R. Armstrong issued an unfavorable opinion.  (R. at 76-92.)  On January 11, 2011, the Appeals Council (AC) denied Plaintiff's request for review, and, on February 1, 2011, the AC "found no reason under [its] rules to reopen and change the decision."  (R. at 93-94.)

### 2. Plaintiff's 2nd protective application

Plaintiff protectively filed applications for DI and SSI benefits on November 22, 2010, which were denied initially on February 15, 2011.  (R. at 121, 100.)

Plaintiff requested a hearing, which was held on January 24, 2012; however, on February 10 / June 20, 2012, ALJ Jessica Inouye issued another unfavorable decision.  (R. at 95-113.)  On August 15, 2013, the AC denied Plaintiff's request for review.  (R. at 114-119.)

### B.    Plaintiff's 3rd Application and the Instant Appeal

On November 10, 2013, Plaintiff filed an application for DI benefits, it was apparently denied on November 20, 2013, but it was not appealed.  (R. at 121, 46-47.)  On November 11, 2013, Plaintiff filed an application for SSI benefits.  (R. at 120, 132.)[1]  On March 3, 2014, the SSA denied Plaintiff's SSI claim.  (R. at 133-136, 46.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 137-139.)  ALJ Brian Garves held a hearing, and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 23-75.)  Plaintiff requested review by the Appeals Council, was granted more time, and submitted medical evidence dated June 15, 2016.  (R. at 216-240, 13-22.)  However, on June 8, 2017, the AC denied Plaintiff's request for review.  (R. at 1-9.)  Thus, ALJ Garves's decision became the Commissioner's final decision.

---

[1] The determination lists the application date as November 11, 2013, and the ALJ uses this date throughout his decision.  (*See* R. at 132, 23-42.)  However, the application summary lists the application date as December 6, 2013, as do the related hearing notices.  (R. at 241-249, 159-178, 189-208.)  This report assumes these applications are the same and only refers to November 11, 2013.

Plaintiff timely commenced the instant action on August 7, 2017.  (DE 1.)

### C.    Plaintiff's Medical History

The administrative record contains approximately 264 pages of medical

records, all of which were available to the ALJ at the time of his April 12, 2016

decision.  (R. at 42, 386-649 [Exhibits 1F – 12F].)  In addition, the record contains

the June 15, 2016 assessment summary of Michelle Kline, M.A., LPC, NCC,

CAADC.  (R. at 13-15.)  These records will be discussed in detail, as necessary,

below.

### D.    Hearing Testimony & Administrative Decision

ALJ Garves conducted a hearing on March 7, 2016, at which Plaintiff, who

was represented by counsel, and vocational expert (VE) Susan J. Rowe testified.

(R. at 43-75; *see also* R. at 352-354.)  On April 12, 2016, ALJ Garves issued his

decision.  (R. at 23-42.)  Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at

**Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since November 11, 2013, the application

date.  (R. at 28.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  spine disorders, left rotator cuff tear, sleep-related breathing

disorders, chronic obstructive pulmonary disease, affective disorder, and anxiety.

(*Id*. at 28-29.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*. at 29-31.)  Between **Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and

determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 416.967(b) except he
> can lift and carry twenty pounds occasionally and ten pounds
> frequently.  He can sit for six hours in an eight-hour shift.  He can
> stand/walk for four hours in an eight-hour shift, although walking
> would be no more than 100 feet at a time.  He would have the ability
> to alternate to standing or walking from sitting for thirty minutes after
> sixty minutes of sitting.  He can frequently operate hand controls
> bilaterally.  He can frequently operate foot controls bilaterally.  [*i.e.,
> exertional limitations*]  He can frequently handle and finger objects
> bilaterally.  [*i.e., manipulative limitations*]  He can occasionally climb
> ramps or stairs.  He can never climb ladders, ropes, or scaffolds.  He
> can never crawl.  He can occasionally kneel, crouch, and stoop.  He
> can frequently balance.  [*i.e., postural limitations*]  He can tolerate
> occasional exposure to excessive vibration and irritants, such as odors,
> fumes, dust, gases, and poor ventilation.  He can tolerate occasional
> exposure to unprotected heights.  He can never operate machinery.
> He can never drive[] commercially.  [*i.e., environmental limitations*]
> He can perform simple, routine, and repetitive tasks.  He cannot
> perform work at production rate pace or meet strict quota
> requirements, but can meet all end of day goals.  He can make simple
> work related decisions.  He can occasionally interact with supervisors,
> coworkers, and the public.  He can never work in narrowly enclosed
> workspaces.  [*i.e., mental RFC assessment*]

(R. at 31-35.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (R. at 35.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

existed in significant numbers in the national economy that Plaintiff could perform. (R. at 36-37.)  The ALJ therefore concluded that, based on the application for SSI protectively filed on November 11, 2013, Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act  (R. at 37.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff argues that the ALJ erred:  **(1)** by unreasonably failing to accommodate the totality of Claimant's combined impairments; **(2)** in evaluating the medical opinion evidence; and, **(3)** in discrediting Claimant's testimony as to subjective symptoms.  (DE 14 at 2, 21-30.)  The Commissioner argues, among

other things, that her decision is supported by substantial evidence.  (DE 19 at 1, 3,
13-23.)

### 1.  Comorbidity

Plaintiff argues that the ALJ's RFC determination does not accommodate
"the totality of Claimant's combined impairments."  (DE 14 at 21-22.)  He claims
his "co-morbid conditions overlap to exacerbate his symptoms of pain, chronic
fatigue and cognitive dysfunction," which, presumably, results in limitations
greater than those assessed by the ALJ, who considered Plaintiff's impairments
separately.  (DE 14 at 22.)

### a.  The ALJ's consideration of Plaintiff's impairments in combination

At Step 2, the ALJ concluded that there was "no evidence that the claimant's
obesity, alone or in *combination*, more than minimally limited the claimant's
physical or mental ability to perform basic work activities[,]" and, thus, found
Plaintiff's obesity to be "non severe."  (R. at 29 (emphasis added).)  In support of
this conclusion, the ALJ reasoned:

> In terms of the claimant's obesity, the claimant's body mass index
> (BMI) has been 30 or above (C1F [R. at 387, 390, 394, 397]; C5F [R.
> at 434, 439, 442, 447, 450]; C6F [R. at 468, 488, 500, 503]; C8F [R.
> at 553, 561, 567, 576, 584]; C11F [R. at 636, 641]).  However, other
> than BMI notations, there is minimal evidence specific to the
> claimant's weight.  There is no evidence that the claimant's obesity
> more than minimally affects the claimant's pulmonary,
> musculoskeletal, endocrine, or cardiac functioning.  The claimant's
> obesity does not affect the claimant's ability to perform routine

> movement and necessary physical activity within a work environment.
> There is also no evidence that it causes or contributes to the claimant's
> mental condition or affects the claimant's social functioning.

(R. at 29.)  *See also* Ex. 7F [R. at 518, 530, 534, 539], Ex. 9F [R. at 593, 597,

605].)  The ALJ then found that Plaintiff's severe impairments, including COPD

and his sleep related disorder, did not meet or medically equal a Listing.  (R. at 29-

30.)  *See, e.g., Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th

Cir. 1987) ("the fact that each element of the record was discussed individually

hardly suggests that the totality of the record was not considered, particularly in

view of the fact that the ALJ specifically referred to 'a combination of

impairments' in deciding that Mr. Gooch did not meet the 'listings.'"); *Loy v. Sec'y

of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's

individual discussion of multiple impairments does not imply that he failed to

consider the effect of the impairments in combination, where the ALJ specifically

refers to a 'combination of impairments' in finding that the plaintiff does not meet

the listings.") (citing *Gooch*, 833 F.2d at 592).

Ultimately, within the RFC determination and after noting that Plaintiff

alleges disability due to many impairments (including COPD, obesity, insomnia,

sleep apnea and hypoxia syndrome),[3] the ALJ summarized that "the *totality* of the

evidence supports the residual functional capacity.  A *combination* of the

---

[3] This list contains even more impairments than listed in Plaintiff's November 11,
2013 application for SSI benefits.  (*Compare* R. at 276 *with* R. at 32.)

9

claimant's physical impairments limit[s] him to the light exertional level, with additional postural, manipulative, and environmental limitations."  (R. at 32, 35 (emphases added).)

### b.   Obesity

Plaintiff claims that his obesity "does not appear to have been factored into the RFC determination."  (DE 14 at 23.)  *See* SSR 02-1P, 2002 WL 34686281 at *7 (S.S.A. Sept. 12, 2002) ("When we identify obesity as a medically determinable impairment . . . , we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.").  Plaintiff points to the February 1, 2014 sleep study interpreted by Oktar Mamedov, M.D., who diagnosed "severe obstructive sleep apnea/hypopnea syndrome (OSAHS)[,]" and further stated:

> Mr. Doolin has been advised against driving or operating dangerous equipment while sleepy and/or fatigued.  He was also advised that narcotics, sleep aides, alcohol, sleep deprivation, supine sleep and obesity have a tendency to worsen sleep architecture and airway stability.

(R. at 479-480.)  Thus, Plaintiff claims, "the evidence supports a finding that his Obesity exacerbates his breathing impairment."  (DE 14 at 24.)

However, even if Plaintiff's obesity exacerbates his breathing impairment, Plaintiff has not shown that the RFC's limitations fail to adequately address his

combined impairments.  Not only did the ALJ expressly note Dr. Mamedov's diagnosis within the RFC determination (R. at 34), but the ALJ also assessed greater standing and/or walking, manipulative, environmental and mental health limitations than did the state agency consultants.  (R. at 31-32, 34-35, 125-129.) Plaintiff's citation to the sleep study fails to illustrate that the ALJ failed to consider that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-1P, 2002 WL 34686281 at *6.

### c.    Pace, fatigue, and environmental concerns

Plaintiff also contends that the RFC does not allow for his needs to "pace all activities with frequent rest periods" and "sleep in a recliner for substantial periods each day[,]" and further contends that the RFC permits him to be "exposed to poor quality air, unprotected heights and excessive vibration."  (DE 14 at 24.)  However, as discussed further below with respect to credibility, the ALJ discussed Plaintiff's fatigue and napping in determining that Plaintiff was only mildly limited in CPP, and, in any event, determined that Plaintiff "cannot perform work at production rate pace . . . ."  (R. at 31-32.)

Moreover, to the extent Plaintiff challenges the adequacy of the RFC's environmental limitations, "vibration," "atmospheric conditions," and "high exposed places," are "not present" in the office helper and mail sorter (clerk) jobs

11

upon which the ALJ relied.  *See* DICOT 239.567-010 (G.P.O.), 1991 WL 672232

(Jan. 1, 2016) and DICOT 209.687-026 (G.P.O.), 1991 WL 671813 (Jan. 1, 2016).

(*See also* R. at 36, 69-70; DE 16 at 16.)  Thus, any error in the omission of these

factors from the RFC's environmental limitations would be harmless.

### 2.     Opinion evidence

#### a.     The ALJ's consideration of opinion evidence

The ALJ represented that he "considered opinion evidence in accordance

with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-

3p."  (R. at 32.)  Specifically, the ALJ assigned:

- "partial weight" to the February 28, 2014 opinion of state agency consultant Edward Brophy, D.O. that Plaintiff was exertionally limited to light work, with additional postural and manipulative limitations (R. at 125-127, 130)

- "partial weight" to the February 25, 2014 opinion of state agency consultant Robert Newhouse, M.D. that Plaintiff "retains the ability to do simple tasks on a sustained basis[.]" (R. at 129.)

- "little weight" to the July 6, 2011 "assessment for disability and work level" co-signed by student Katie Meyers and what appears to be a therapist (R. at 465-466; *see also* R. at 107.)

- "great weight" to psychological consultative examination (CE) report of Leon Austin, Psy.D. (R. at 414-419.)

- "great weight" to the April 15, 2014 opinion of Oktar Mamedov, M.D. (R. at 470.)

- "partial weight" to the September 1, 2015 opinion of treating physician Karen DeYoung, D.O. (R. at 420-423, 630-633.)

(R. at 34-35.)

### b.    Treating physician Karen DeYoung, D.O.

Plaintiff claims that the ALJ "erred in evaluating the medical opinion evidence[,]" when he adopted state agency record reviewer Dr. Brophy's physical RFC assessment instead of treating physician Dr. DeYoung's opinion.  At Step 3, the ALJ referenced Dr. DeYoung's opinion that Plaintiff met Listing 1.04A but followed by explaining that:

> . . . the medical record of evidence does not support this finding. First, there is no evidence of a compromise of a nerve root or the spinal cord (see diagnostic image findings at C1F/22; C9F/14; CSF/25).  In addition, the medical record of evidence does not indicate any limitation of the spine, a motor loss accompanied by sensory or reflex loss, or positive straight leg raising (C5F; C6F; C7F; C8F; C9F; C11F).

(R. at 29, 420-421, 630-631.)  Later, in assigning Dr. DeYoung's September 1, 2015 opinion "partial weight," the ALJ explained:

> As discussed above, the record does not indicate that the claimant meets listing 1.04.  In addition, although I do not agree with the extent of the exertional and postural limitations posited by this physician, as the record does not support such an advanced degree of restrictions, I agree with the general categories of restrictions.  These categories of restriction are necessary to address reported symptoms of pain in various areas, which limit the claimant exertionally and posturally. Restrictions to this effect are included in the residual functional capacity assessment.

(R. at 35, 421-422.)

The ALJ twice noted that Plaintiff's treating provider / physician authored this opinion.  (R. at 29, 35.)  As such, the ALJ clearly considered the "examining relationship" and "treatment relationship" factors.  20 C.F.R. §§ 404.1527(c)(1)-(2), 416.937(c)(1)-(2).  Moreover, the ALJ agreed that Plaintiff had exertional and postural limitations, just not to the "degree" assessed by Dr. DeYoung.  Thus, he permissibly discounted Dr. DeYoung's opinion based on the supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3)-(4), 416.937(c)(3)-(4).  Plaintiff's contention that he is limited to "a restricted range of sedentary work," based on Dr. DeYoung's opinion, is unavailing, as he has not shown how it is "consistent with the medical and other evidence of record . . . ."  (DE 14 at 15, 26, 630-633.)

### c.      State agency consultant Edward Brophy, D.O.

In assigning "partial weight" to Dr. Brophy's opinions that Plaintiff was exertionally limited to light work, with additional postural and manipulative limitations, the ALJ recognized Dr. Brophy as a DDS "reviewing consultant."  Therefore, the ALJ was aware of Dr. Brophy's specialty and that these opinions were not the result of an "examining relationship" or a "treatment relationship."  20 C.F.R. §§ 404.1527(c)(1)-(2), 416.937(c)(1)-(2).  In addition, the ALJ explained:

> I give great weight to the opinion that the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, but find

> evidence submitted at the hearing level, in addition to the claimant's
> subjective complaints, warrant[s] a reduction in the amount of time he
> can stand and/or walk, and his ability to operate hand and foot
> controls, as well as his ability to handle and finger objects.  In
> addition, I find that his [COPD] warrants environmental limitations.

(R. at 34, 125-127, 30.)  The additionally submitted evidence appears to be articles

from MEDSCAPE, records from Munson Healthcare, and the March 11, 2016

spirometry report revealing "moderate airway obstruction."  (R. at 26, 365-385,

634-648, 649.)  Thus, the ALJ permissibly discounted Dr. Brophy's physical RFC

assessment – adding further exertional, manipulative, and environmental

limitations – based on the supportability and/or consistency factors.  20 C.F.R. §§

404.1527(c)(3)-(4), 416.937(c)(3)-(4).  Although Plaintiff makes a largely

undeveloped argument that the ALJ erred by "rely[ing] on this opinion in the RFC

finding[,]" (DE 14 at 25), the fact remains that the ALJ significantly discounted it,

adding limitations to Plaintiff's advantage.

### d.      COPD, OSAHS, obesity and medications

Plaintiff claims that the ALJ "erroneously adopted" Dr. Brophy's exertional

limitations, as they were "based on a record review[,]" considering only his spine

and affective disorders, not his COPD, OSAHS, obesity or opioid use.  (DE 14 at

25.)  True, the February 28, 2014 disability determination explanation lists only

spine disorders and affective disorders as impairment diagnoses.  (*See* R. at 124.)

However, the ALJ's RFC determination addresses COPD, OSAHS, obesity and

opioid use in other ways:

- The ALJ expressly considered Plaintiff's COPD and, effectively, *discounted* Dr. Brophy's assessment of "no" environmental limitations by adding several such restrictions.

- The ALJ expressly considered Dr. Mamedov's February 1, 2014 OSAHS diagnosis; assigned "great weight" to his April 15, 2014 advice "against driving or operating dangerous equipment while sleepy and/or fatigued[;]" and, the RFC provides that Plaintiff "can never operate machinery," and "can never drive[] commercially."  (R. at 32, 34-35, 470, 480).

- The ALJ addressed obesity at Step 2 and COPD and "sleep related disorder" at Step 3 (R. at 29-30), and Plaintiff's citation to the sleep study fails to illustrate that the ALJ failed to consider that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-1P, 2002 WL 34686281 at *6.

Finally, the record contains evidence of opioid maintenance, and, on November 6,

2013, Anthony C. Hockin, Ph.D. considered Plaintiff "to be slightly higher than the

midpoint for potential complications related to opioid therapy."  (R. at 424, 587,

620, 623, 506, 613.)  Even if the ALJ did not expressly refer to opioids, or a

specific pain reliever within that class of drugs, the ALJ addressed the issue of

Plaintiff's medication and side effects throughout his decision by citing Plaintiff's

testimony and medical records, which will be addressed below in the credibility

analysis.  (R. at 31-34.)  Thus, assuming COPD, OSAHS, obesity and opioid use

were absent from Dr. Brophy's records review, the ALJ's own consideration and

assessment of these matters elsewhere in his decision is supported by substantial evidence.

### 3.   Credibility

The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 96-4p." (R. at 32.)  The ALJ then found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 33.)  Plaintiff claims that the ALJ's credibility "rationale was not reasonable on the entire record or supported by substantial evidence."  (DE 14 at 28.)

### a.   Regulation

When "[e]valuating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work[,]" the SSA considers "objective medical evidence," as well as "other evidence."  20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3).  Relevant factors include:

(i)   Your daily activities;

(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  *See also* SSR 16-3p ("Evaluation of symptoms in disability claims").

The ALJ's "assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *see also Rogers,* 486 F.3d at 247.  Thus, the ALJ's credibility findings have at times been characterized as "unchallengeable." *Payne v. Comm'r Soc. Sec.,* 402 F.App'x 109, 113 (6th Cir. 2010); *see, Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility.  It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (quotations and citation

omitted).  Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531.

### b.    The ALJ's credibility evaluation

The ALJ considered Plaintiff's "activities of daily living," citing Plaintiff's function report and hearing testimony, and ultimately found that Plaintiff was mildly restricted.  (R. at 30; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).)  The ALJ also considered Plaintiff's medications and side effects.  (R. at 31-34; 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).)  In addition, the ALJ engaged in a lengthy discussion of the evidence regarding Plaintiff's back pain, shoulder impairment, OSAHS, COPD and mental impairments.  (R. at 33-34.)

Plaintiff claims that his impairments "have been resistant to medical treatment," with "little to no relief realized from back surgery, ESI [epidural steroid injection], shoulder surgery, increasingly ineffective narcotic pain medications, and unsuccessful attempts to treat his severe OSAHS[,]" and that he "tries to manage his symptoms through activity modification, reclining and frequent naps."  (DE 14 at 29.)  However, Plaintiff does not provide any record citations for this statement, and, based on the RFC as assessed, it is clear the ALJ rejected Plaintiff's "need to rest and recline periodically during the day on an as-

needed basis for pain control . . . [.]"  (R. at 72.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(vi), 416.929(c)(3)(vi).

As best the Court can tell, Plaintiff specifically takes issue with the ALJ's statement that "there is no evidence in the medical record to support the claimant's testimony that he has fallen several times due to problems with his left leg."  (R. at 33.)  Plaintiff claims this is unreasonable, because "the medical evidence documents left leg weakness and antalgic gait[.]"  (DE 14 at 29.)  Again, he does so without record citation.  In any event, Dr. Brophy noted "antalgic gait" among the explanations for his assessed exertional limitations.  (R. at 125-126.)  Moreover, the ALJ discussed Plaintiff's allegations regarding left leg weakness and pain, as well as Plaintiff's provider's notation(s) of "antalgic gait."  (R. at 32-33.)  Thus, even if the lack of medical records is explained by the fact that he "does not allege injury in any fall," and even if his testimony about left leg pain and his function report are consistent (*see* R. at 58-59, 290), the ALJ ultimately found that Plaintiff's "subjective complaints" were partial support for the "reduction in the amount of time" Plaintiff could "stand and/or walk."  (R. at 34.)  Moreover, as noted above, the ALJ assessed exertional and postural restrictions as "necessary to address *reported symptoms* of pain in various areas, which limit the claimant exertionally and posturally."  (R. at 35 (emphasis added).)  In other words, he did

20

not completely discount Plaintiff's credibility and assessed additional limitations where he determined Plaintiff's allegations were credible.

Next, Plaintiff specifically takes issue with the ALJ's statements that "the record does not indicate any treatment for, or complaints of, shoulder pain after July 2014[,]" or that, despite his mental impairments, "there is no evidence that the claimant is currently seeking counseling or treatment from a *mental health provider*." (R. at 34 (emphasis added).) However, Plaintiff offers no record citation for his statement that he "continued to seek treatment for these conditions through his primary care provider," and "remained on Abilify for depression at the time of the hearing." (DE 14 at 29.) Moreover, if Plaintiff is referring to prescriptions by Dr. DeYoung, whose specialty is family medicine, she is not a psychologist or psychiatrist. (R. at 420, 630.)

Finally, Plaintiff specifically takes issue with the ALJ discounting his testimony regarding the efficacy of Morphine and related side-effects. (DE 14 at 29-30.) At the hearing, Plaintiff testified that he takes Nortriptyline (for depression and sleep), Abilify (for depression), Prevastatin (for cholesterol), and Morphine (presumably for pain), and side-effects include "sleepiness, tiredness, [and] sometimes nausea[a]." (R. at 61; *see also* R. at 279, 327.) In finding that Plaintiff had mild difficulties with regard to CPP, the ALJ stated:

> The claimant testified that his medication causes him to be tired and that he takes naps for two to three hours per day (Hearing [R. at 61,

21

> 64]).  However, his providers note that there were no side effects of
> his medication (C9F/l [R. at 587]). . . .

(R. at 31.)  In fact, Richard Burke, M.D.'s May 28, 2014 notes state that Plaintiff

"denies any side effects related to his medications[,]" and the medication list,

which included MS Contin, Nortriptyline, Pravastatin and Abilify, was "reviewed

and reconciled with the patient[.]"  (R. at 587.)  Moreover, while Dr. DeYoung's

July 10, 2015 notes indicate "sweating" as an adverse effect of medications, she

further wrote, "patient denies having adverse effects of . . . drowsiness from

medications."  (R. at 552.)  These were among the pieces of evidence the ALJ cited

when concluding:

> . . . there is no evidence in the medical record to support the claimant's
> testimony that his pain medication is not working as well as it used to,
> or that his medication causes side effects such as drowsiness or
> nausea.  To the contrary, as discussed above, the medical record of
> evidence indicates that the claimant reports that the medication
> managed his pain well and without any side effects.

(R. at 33.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

In addition to contending that the effectiveness of narcotics can decrease

with tolerance and noting that there have been many adjustments to his medication,

Plaintiff asks the Court to consider: **(a)** Dr. DeYoung's October 10, 2014 notes,

which reflect that Plaintiff's dosage was changed at his last appointment and "so

far things are going well except for some mild increased drowsiness[;]" and, **(b)**

Plaintiff's function report, where he lists multiple medication side effects

(including nausea and tiredness). (DE 14 at 30, 509, 291.) However, Plaintiff admits that "*he* reported drowsiness both to Dr. DeYoung . . . and to SSA[,]" (DE 14 at 30 (emphasis added)); thus, both of the items to which Plaintiff specifically refers are his own subjective reports. More importantly, Plaintiff has not shown how the side effect of drowsiness is not cured by the RFC's limitations of never operating machinery and never driving commercially. (R. at 32.) Plaintiff has not shown that the ALJ was errant in his credibility assessment. Thus, it should stand.

### G. Conclusion

Plaintiff has failed to meet his burden to successfully establish any of his statements of error, each of which concerns Steps 2, 3 and/or 4. *Walters*, 127 F.3d at 529 ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Therefore, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 31, 2018                    s/Anthony P. Patti
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

### **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on July 31, 2018, electronically and/or by U.S. Mail.

s/Michael Williams_____
Case Manager for the
Honorable Anthony P. Patti
